IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 17, 2018 Session

## STATE OF TENNESSEE v. STEVE M. JARMAN

**Appeal from the Circuit Court for Dickson County**
**No. 2015-CR-585,   Larry J. Wallace, Judge**

_____

**No. M2017-01313-CCA-R3-CD**

_____

JAMES CURWOOD WITT, JR., J., concurring.

I join in the majority's disposition of this case. I write separately because it is my view that the references to passion and provocation by their very nature express neither elements of voluntary manslaughter that the State is required to prove nor an absolute defense; instead, they are a type of built-in mitigation to a knowing or intentional killing.

Voluntary manslaughter is a form of intentional or a knowing killing, as the case may be, the difference being that voluntary manslaughter, the lesser offense, is committed following "a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a). The term "element" in the context of criminal proscriptive statues, however, denotes a component of such a statute that the State is required to prove beyond a reasonable doubt. *See* T.C.A. § 39-11-201. The State's burden to prove the crime's essential elements has been elevated to the status of a due process mandate. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The passion and provocation components of the crime of voluntary manslaughter are exculpatory in nature–a largess in favor of a defendant–and logically cannot form a component of the State's burden of proof; yet, the functional status of these terms has remained somewhat cloudy.

*State v. Williams*, is somewhat notable for referring to the passion and provocation components of voluntary manslaughter as elements. *Williams*, however, was an appeal from a conviction of second degree murder. As a defense to the charge of murder, Williams claimed that the proof showed he had engaged in mutual combat with the victim, thereby invoking a common law defense to a homicide charge. The *Williams* court held that "the trier of fact must consider all facts surrounding a killing, including

the facts giving rise to an agreement to combat, to determine whether the killing resulted from 'a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.'" *State v. Williams*, 38 S.W.3d 532, 539 (Tenn. 2001). The court determined that the common law notion of mutual combat was now subsumed within the framework of the offense of voluntary manslaughter. *Id.* at 538. Further, the court, finding that the jury had heard the defendant's proof, held that, "by its verdict, the jury obviously rejected" the argument of mutual combat and that the issue conclusively lay within the province of the finder of fact. *Id.* The result was that the evidence was held to be sufficient "to support the jury's verdict of guilt[y] *on the charge of second degree murder*," *id.* (emphasis added), despite the *defendant's* attempt to show that his passion and provocation abated his crime to one of manslaughter. The plain implication is that the court viewed the advancement of passion and provocation as a defensive function, albeit one that failed given the customary deference to the jury's prerogative. Whether passion and provocation are "elements" of the offense of voluntary manslaughter had no play in the court's decision, and it certainly did not hold that these factors are elements. Indeed, the *Williams* court made the statement about the passion and provocation terms being elements distinguishing manslaughter from second degree murder while explaining that malice is no longer the distinguishing factor between murder and the lesser forms of homicide. *Id.* It should be clear that Justice Birch in *Williams* was not using the term "element" as a term of art–as an essential element in the way we have defined it above.

Prior to the enactment of Tennessee Code Annotated section 40-18-110(g)(2), declaring voluntary manslaughter to be a lesser included offense of first and second degree murder, some opinions of this court, including one by this author, state without analysis that voluntary manslaughter is a lesser included offense of first and second degree murder under part (b) of *State v. Burns*. *Burns* part (b) was essentially a shoehorn device for determining that an offense is a lesser included offense of a greater offense even though the elements of the lesser offense are not subsumed within the greater. *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999); *see, e.g., State v. Paul Clifford Moore, Jr.,* No. E2015-00585-CCA-R3-CD, slip op. at 16 (Tenn. Crim. App., Knoxville, May 12, 2016) ("As to Moore's argument that voluntary manslaughter is an atypical lesser included offense because it appears to have an additional element that the greater offense does not, we note that the Tennessee Supreme Court fully addressed this scenario under subsection (b)(1) of its definition of lesser included offenses in *State v. Burns . . . .*"); *State v. Mario Ward,* No. W2007-00672-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Oct. 27, 2008) ("[T]he law is settled that attempted voluntary manslaughter is a lesser included offense of attempted first degree murder under part (b) of the Burns test." (citing *State v. Dominy*, 6 S.W.3d 472, 477 (Tenn. 1999)); *State v. Hezekiah Cooper*, No. W2005-02481-CCA-R3-CD, slip op. at 15 (Tenn. Crim. App., Jackson, Dec. 20, 2007) ("In this case, the State concedes that voluntary manslaughter is a lesser included offense of first and second degree murder." (citing *Dominy*, 6 S.W.3d 472, 477 n.9 (Tenn. 1999)); *State v. Walter Wilson*, No. W2001-01463-CCA-R3-CD, slip

op. at 9 (Tenn. Crim. App., Jackson, Sept. 4, 2002) (inferring that voluntary manslaughter is a lesser included offense of first degree murder under *Burns* part (b) because footnote 9 in *Dominy* "referred . . . to the 'passion' language . . . as reflecting a less culpable mental state than required for first- or second-degree murder"). We have no doubt that voluntary manslaughter *may* fall within *Burns* part (b)'s threshold for offenses the elements of which indicate a lesser kind of culpability, but to imply that the adoption of *Burns* part (b) was the development that made it so was a wide-spread misreading of *Dominy*.

To explain, we begin by noting that the typical precedential basis for saying that voluntary manslaughter is a lesser included offense of first and second degree murder via *Burns* part (b) is the oft-mentioned footnote 9 in *Dominy*, 6 S.W.3d at 477 n.9, the companion case to *Burns*. *See, e.g., State v. Jeffery Lee Mason*, No. M2002-01709-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Nashville, May 19, 2004) (addressing Mason's conviction of attempted voluntary manslaughter as a lesser included offense of attempted first degree murder and stating that "[a]ttempted voluntary manslaughter is a lesser included offense of attempted first degree murder under the *Burns* test"). In *Dominy*, however, the supreme court was reflecting upon jurisprudential history when it observed that *State v. Trusty*, 919 S.W.2d 305 (Tenn. 1996), the erstwhile regimen for determining lesser included offenses, had failed to recognize that voluntary manslaughter was already a lesser included offense of first and second degree murder even without the high court's machinations in *Trusty*. The prevailing regimen for determining lesser included offenses prior to *Trusty* was the so-called "*Blockburger*" test for lesser included offenses as espoused by the earlier decision of *Howard v. State*, 578 S.W.2d 83 (Tenn. 1979). Under this test, an offense was a lesser included offense of a greater offense when all of its essential elements were included with the greater offense. The historical time period being referenced was the time between the enactment of the present criminal code in 1989 and the filing of *Trusty* in 1996, a time when the *Howard* rule prevailed vis-a-vis the terms of the new code. In *Dominy*, Justice Drowota said, "*Trusty* failed to recognize that the 'passion' language in the definition of voluntary manslaughter *simply reflects a less culpable mental state* than required for first or second degree murder." *Dominy*, 6 S.W.3d at 477 n.9 (emphasis added). Hence, the court was saying that, during this foregoing time period, voluntary manslaughter's elements were included within the elements of first and second degree murder, making it a lesser included offense of those greater offenses; the passion and provocation components of voluntary manslaughter were not essential elements of the crime but "simply reflect[ed] a less culpable mental state than required for first or second degree murder." In foot note 9, the *Dominy* court then stated, "Therefore, voluntary manslaughter is a lesser included offense of first and second degree murder." The reliance of progeny upon footnote 9 as "holding" that voluntary manslaughter *became* a lesser included offense of first and second degree murder via *Burns* part (b) probably stems from the *Dominy* court's citing, immediately after the above statement, the *Burns* test, emphasizing the language of the (b) part. Close inspection of the citation, however, reveals that Justice Drowota used the analogous "see" citation for this purpose. The import of this mechanism, combined with the preceding

statement, is that *Burns* part (b) afforded analogous or conducive support, not determinative authority, for the statement. The more precise interpretation of *Dominy*, therefore, is that the passion and provocation components of voluntary manslaughter are defensive considerations and not essential elements of that offense.

Furthermore, this treatment of this offense is accommodated by statute. The passion and provocation components of voluntary manslaughter do not negate the *mens rea* elements of intentional and knowing that underlie the murder offenses (in the same way that the passion and provocation construct negated the existence of malice at common law); however, Code section 39-11-203 provides, "A ground of defense, other than one (1) negating an element of the offense or an affirmative defense, that is not plainly labeled in accordance with this part *has the procedural and evidentiary consequences of a defense.*" T.C.A. § 39-11-203(e)(1) (emphasis added). The ambit of this provision embraces the passion and provocation components of the voluntary manslaughter statute. Recognizing these components as having defensive import does not mean that one must be able to label them collectively as a particular type of defense. It just "is what it is."

Determining, therefore, that the law at least does not affirmatively provide that these components of voluntary manslaughter are true elements of the offense–and further that the law does not preclude the contrary proposition–the issue is one of common sense and logic. On this point, the notion that passion and provocation in the manslaughter statute are essential elements of that offense is nothing short of nonsensical. For example, when voluntary manslaughter is the conviction offense, would not classifying passion and provocation as elements of that offense mean that the State's failure to prove those "elements," exculpatory though they may be, result in a reduction of the charge or an absolute acquittal? In that circumstance, it should be obvious that all the State should be required to show is a knowing killing. That showing should entitle it to a conviction of the charged offense of voluntary manslaughter.

Requiring the State to prove what is essentially an exculpatory circumstance is akin to a house divided unto itself. If in a given case there is a concern about the adequacy of the evidence of passion or provocation, courts should comprehend that the concern is really for the evidentiary justification of a jury instruction on voluntary manslaughter; it is not an issue of the "sufficiency" of the evidence establishing essential elements of the crime. *See Burns*, 6 S.W.3d at 467-69 (explaining the process for determining when the evidence justifies a jury instruction on a lesser included offense). Once the proper determination about instructing the jury is made, the jury's decision resolves, if necessary, all other issues about the terms of voluntary manslaughter.

_____

JAMES CURWOOD WITT, JR., JUDGE